LAND, J.
 

 While a sale of certain trapping lands belonging to Ouachita National Bank was under negotiation between plaintiff and defendant, defendant took possession of the lands, leased them for his own account, and collected two years’ rental, amounting to $10,-000.
 

 The negotiation ultimately failed, on account of the withdrawal of defendant, and the present suit for the amount of the rentals was brought against defendant by plaintiff bank. Judgment in the full sum claimed was recovered by the bank in the lower court, and defendant has appealed.
 

 The amount of the rental, its collection, and its detention by defendant, are admitted.
 

 The only issue involved in the suit relates to certain claims of expenses incident to the lease, which are set up by defendant in his answer as offsets against the rental collected by him. These alleged offsets total $9,700, leaving the sum of $300 due to plaintiff bank, the owner of the land, if we are to allow credit for all of the offsets claimed by defendant.
 

 In setting up these offsets in his answer, defendant avers that they were incurred after he had been placed, by plaintiff bank, in possession of the lands as owner ; that plaintiff bank endeavored to correct its title; and that defendant would have taken title to the property, if the defects in the title had been cured.
 

 Defendant then alleges:
 

 “That acting under said situation, your respondent spent large sums In protecting said property from trespassers and patrolling the same to protect the wild life thereon, which wild life gave the property the only value which it had, and that for the two years your respondent protected and patrolled said property at an expense to him in cash of $3,000.
 

 “That your respondent devoted twd years ■of his time to the improvement and management of said property, for which a reasonable charge is $2,400.
 

 
 *261
 
 “That your petitioner did work upon said property in the shape of canals and ditches for the purpose of adapting it to the increase of wild life thereon, which work has a reason-' able worth of $1,500.
 

 “That your respondent employed attorneys, namely John Dymond, Jr., and A. Giffen Levy, in connection with the clearing up of said property, and they worked on said titles with the knowledge and approval, and partially under the directions in certain respects, of the Ouachita National Bank, the plaintiff, and that their services are reasonably worth the sum of $2,000.
 

 “That your respondent in his attempts to co-operate with plaintiff in clearing up defects -in the title and in the administration of said property during two years spent the further sum of $800, making a total of $9,-700.” Article XXI of answer.
 

 On the trial of the case, the plaintiff objected to any evidence in support of the offsets on the following grounds:
 

 (a) That the allegations making the same are vague, general, uncertain, and indefinite, and not pleaded in fullness or particularity.
 

 (b) That plaintiff’s demand in this case, and that set forth by the defendant in his plea of compensation, are not equally due and exigible.
 

 (c) That compensation does not take place in fiduciary contracts arising from irregular deposit.
 

 On the trial of the ease, plaintiff’s objections to the admissibility of the evidence were sustained as to all of the items of the offsets, except item 1 of $3,000, charged for patrolling the property, and protecting the same against trespassers.
 

 As to this particular item, evidence was admitted and heard on the merits, as the court wás of the opinion that the issue raised was purely one for accounting, and the alleged expenditures may have been necessary for the purposes, strictly of, and growing out of, the lease.
 

 In Rosenthal-Brown Fur Co. v. Jones-Frere Fur Co., 162 La. 411, 110 So. 630, 633, this court said: “The question whether a possessor be in good faith or in bad faith (legal or actual) is the sole factor in determining whether such possessor should or should not account for the fruits of his possession. But it is not a factor at all in determining what those fruits may be. Those fruits are
 
 the profits
 
 which the possessor has derived from his possession. If he was in.good faith he has nothing to restore (R. C. C. 502); but even the possessor in. bad faith is entitled to reimbursement for the expenses incurred in producing the fruits for which he must account to the owner (cf. St. Paul v. La. Cypress Lumber Co., 116 La. 585, 595, 596, 40 So. 906); for the harsh rule of the common law does not prevail in this state. R. C. C. 501.”
 

 This is the general rule; but, in this particular case, the plaintiff and defendant have made a special law for themselves, by agreeing that, if within a reasonable time the title was accepted and the purchase price paid, with interest, then the defendant would retain the lease money, but in the event the defendant did not accept title to the property, the rentals were to be accounted for by defendant to plaintiff.
 

 We are satisfied, from the circumstances of the case, that defendant was not acting as agent of plaintiff, in taking possession and leasing these lands for the term of two years. On the contrary, plaintiff was acting in his own behalf as prospective owner, was in good faith, and ultimately expected to receive a warranty deed and good and merchantable title from plaintiff. Besides, plaintiff ratified the lease,' with full knowledge of the facts.
 

 The objection to the evidence in support of the offsets, on the ground that compensation does not take place in fiduciary relations aris
 
 *263
 
 ing from irregular deposit, is not good, and should not have been sustained, as defendant was not an agent of plaintiff, but acted as owner on his own account.
 

 Nor is the objection to the evidence offered by defendant to prove the offsets, on the ground that these
 
 claims
 
 are not equally due and exigible with plaintiff’s demand, a sound one, since these offsets are merely credits claimed by defendant in a suit brought by plaintiff to compel defendant to account for the sum of $10,000, received by him from the rental of the property. In an action for an accounting, the defendant is clearly entitled to present against plaintiff’s claim credits to which he may be entitled, whether duly liquidated and demandable or not. Such credits, though designated by defendant as offsets, are not technically pleas in compensation, but are in the nature of reconventional demands, the validity of which is to be determined on the trial of the ease.
 

 In our opinion, the trial judge properly excluded evidence as to all of the offsets, except that of $3,000 for patrolling the trapping lands of plaintiff, as a mere inspection of the answer of defendant shows that the allegations as to these offsets are so vague, general, and indefinite that plaintiff bank was placed in a position in which it could not defend itself against such claims.
 

 As to this particular offset, defendant has failed signally to prove same with due legal certainty. Defendant admits expending $9,000 on a warden account for patrolling all of the lands under his supervision, approximately 100,000 acres, for the two years, 1923-24 and 1924-25.
 

 Defendant arrives at the expense of $3,000, charged for the protection of plaintiff’s lands, 10,000 acres, by a method of approximation under which he debits plaintiff with one-third of the whole warden expense of $9,000, incurred for the supervision of 100,000 acres under defendant’s control.
 

 No books or records in support of. defendant’s charge of $3,000 are offered, except check stubs, which do not mention the patrolling of plaintiff’s lands. Defendant employed a number of conservation agents to look after his own lands, and necessarily incurred considerable expense on his own account.
 

 Defendant testified that three conservation agents were specially employed by him to protect plaintiff’s lands. Only one of these agents appeared at the trial, and testified that he had spent considerable time on the property of plaintiff in watching for trespassers. The testimony of this agent was contradicted by the lessees of defendant, who testified that they had received no protection from defendant, and had never seen one of his agents on the leased premises.
 

 Considering the fact that the charge of $3,000 is arrived at more by an unfair method of approximation than by any other character of evidence, and noting the absence of books or records to support the cnarge, as well as the conflicting testimony as to whether any agent of defendant actually patrolled plaintiff’s lands at all, we are constrained to concur in the view of the trial judge that the item of $3,000, for supervising the property of plaintiff, has not been established by clear and satisfactory evidence.
 

 Judgment affirmed.
 

 O’NIELD, C. J., is of the opinion that the defendant is entitled to a fair compensation for the services which he rendered and the improvements which he made, especially as they enhanced the rental value of the land from $500 per annum
 
 to
 
 $5,000 per annum.