50 So.2d 312 (1951)
MYERS
v.
MARICELLI et al.
No. 3329.
Court of Appeal of Louisiana, First Circuit.
February 8, 1951.
*313 King, Anderson & Swift and W. R. Jackson Jr., all of Lake Charles for appellants.
Chappuis & Chappuis, Crowley, for appellee.
LOTTINGER, Judge.
This is an action for property damages arising from a collision between a truck belonging to plaintiff and a Mercury sedan belonging to defendant Maricelli. The accident occurred on June 14, 1949, at about 9:00 A.M., on U. S. Highway 90, inside the corporate limits of Rayne, Acadia Parish, Louisiana. The highway, at the locale of the collision, runs East and West, is concrete, eighteen feet wide, straight and level, and it is evident that visibility was good.
Prior to the accident, plaintiff had been driving along a gravel street going south. At the point where the street enters the highway, there is a garage, Rayne Economy Motor Company, to the right; the Builder's Lumber Company, plaintiff's destination, is across the highway to the south, and is almost opposite the garage. Upon reaching the highway, plaintiff turned right, or westerly, on the gravel portion, or north shoulder, of the highway, in front of the garage, as a car, travelling west on the highway, was approaching. He travelled a short distance west, stopped to allow the car to go by, then turned left to cross the highway in order to get to his destination, the Builder's Lumber Company. He first saw a car approaching from the west, defendant Maricelli, a distance of approximately 500 feet; however, thinking he had sufficient time to make the turn and crossing, he turned left and commenced crossing the highway. When he reached a point in the center of the highway, the exact location is in dispute, he, realizing that he would be unable to complete the crossing, applied his brakes and brought *314 his truck to an immediate stop. Plaintiff claims that his truck stopped with its right front wheel resting about on the center line of the highway, and with its left front wheel resting about two or three feet south of the center line of the highway.
Defendant Maricelli, prior to the collision, was travelling easterly in the south lane of the highway at about 60 miles per hour. Upon reaching the corporate limits of the City of Rayne, and noticing the signs indicating the speed limits within the corporate limits, he slowed his speed and was travelling approximately 40 miles per hour when he first sighted plaintiff's truck. Maricelli testified that, when he was about 100 feet from the point of impact, plaintiff signalled for a left turn and immediately turned. Upon discovering that plaintiff was turning into his path, Maricelli immediately applied his brakes and skidded some 57 feet down the center of his lane to the point of impact. Maricelli, contrary to plaintiff, testified that plaintiff's truck was still moving at the moment of impact, and that, at said moment, the right front wheel of plaintiff's truck was at least 3 feet into the south lane of said highway, and, thus, the left front wheel was even further into said lane.
Plaintiff bases his demand upon the assumption that the negligence of Maricelli was the proximate cause of the accident and that Maricelli had the last clear chance of avoiding the collision. These assumptions are based upon the premise that Maricelli could have averted the collision by driving his car a few feet to the right so as to pass plaintiff's truck to its front. Maricelli, on the other hand, contends that he was unable to do this as another truck was stopped to the south of said highway, and that, had he turned to avoid hitting plaintiff, he would have struck the other truck.
Plaintiff contends that, at the time of the accident, Maricelli was acting within the course and scope of his employment with Schlumberger Well Surveying Corporation; that said corporation carried liability insurance with Aetna Casualty and Surety Company of Hartford, Connecticut. These contentions are admitted by defendant, and the said employer and insurance company are made defendants with Maricelli, herein.
Plaintiff's demand is in the sum of $217.63, the amount of damages resulting to his truck as a result of said accident. Defendant answered, denying any liability, and reconvenes in the sum of $448.26, the amount of damages to Maricelli's car. The lower court found that defendant had the last clear chance of averting the accident and, thus, rendered judgment in favor of plaintiff. Defendants took this suspensive appeal.
For a case of this sort there are very few points of fact in dispute. We find that only two of these points are of such importance herein as to merit discussion. The first point in conflict is to the position of plaintiff's truck at the moment of impact. Plaintiff claims that the left front wheel of his truck was only two or three feet into the south lane, while his right front wheel was on the center line of the highway. Defendants, on the other hand, claim that, at the moment of impact, the left front wheel of plaintiff's truck was about two-thirds into the south lane, while his right front wheel was some three feet into the south lane. We believe that the record conclusively shows that defendant's contention, in this respect, was more nearly correct than that of plaintiff. Several witnesses testified, without contradiction, that the skid marks made by defendant's car were in the center of the south paved lane of said highway; that the paved portion of the highway was eighteen feet in width, thus making the south lane nine feet in width. Plaintiff admitted that, as a result of said collision, more than half of the right front fender on his truck was smashed. The normal car is approximately six feet in width. Thus, as Maricelli's car was in the center of the south lane, at the time of impact, there was some eighteen inches of clearance between the left front of his car and the center line of the highway. Thus it was necessary for the right front of plaintiff's truck to be some three feet into the south lane so as to have caused the right front fender to be damaged as alleged by plaintiff. Wilson Bordes, *315 an eye witness, testified that plaintiff's truck was about in the middle of the south lane when the accident occurred. We conclude, therefore, that at the moment of the impact, at least half of the south lane of traffic was blocked by plaintiff's truck.
The second major point in dispute is to the position of the Bordes truck which was parked on the south shoulder of the said highway. Plaintiff claims that it was parked some 12 feet south of the paved portion of the highway, so as to give Maricelli sufficient room to avert the collision by turning onto the south shoulder of the highway. Defendant, on the other hand, claims that the Bordes truck was in such a position of the shoulder as to render it impossible for him to turn onto the shoulder without hitting the Bordes truck. The evidence shows that the south shoulder of the highway, for some distance on either side of the point of impact, was twenty, or more, feet in width. The lower court concluded that Maricelli could have averted the accident by turning to the right or stopping. We believe this to be error. The facts show that Maricelli did not discover plaintiff's peril until plaintiff commenced his turn at a distance of approximately 100 feet. The record shows that, after application of his brakes, Maricelli's car skidded in a straight path for some 57 feet. In Blashfield's Cyclopedia of Automobile Law and Practice at § 6237, we find a chart which indicates the distance within which vehicles can be stopped. It indicates that an automobile travelling at the rate of 40 miles per hour, travels at the rate of 59 feet per second and that it takes the average driver ¾ of a second to react to a warning during which time, he has travelled 44 feet at that speed and that it takes an automobile with brakes in excellent condition 71 feet to stop and it takes a total distance required to stop of 115 feet. Therefore, according to this chart, it is evident that this defendant was travelling at a speed of 40 miles per hour or better. Since we conclude that Maricelli had no reason to believe that the plaintiff would turn until the turn was actually commenced and that distance was approximately 100 feet from the point of impact, we conclude that he could not have stopped his automobile within a shorter space than what occurred since he immediately applied his brakes in order to bring his car to a stop.
Defendant claims that, even if there was sufficient clearance for him to turn to the right to avoid the accident, he can only be held to doing what a reasonable man would have done under the circumstances, and that, upon discovering the emergency of the situation, he acted as a reasonable and prudent man in attempting to bring his car to a stop in order to avoid the collision, or lessen the damages.
The law is well settled that a person attempting to turn left on the public highways of this state must ascertain, before turning, that said turn might be made in safety. Act No. 286 of 1938, § 3, Rules 9 and 10, LSA-RS 32:235, 32:236. He must yield the right of way to normal oncoming or overtaking traffic. Malone v. Fletcher, La.App., 44 So.2d 352; Michelli Rheem Mfg. Co., La.App., 34 So.2d 264. A motorist who is about to make a left turn should carefully survey the surroundings to ascertain whether the traffic conditions warrant the action he is about to take and if he fails to do so, he acts at his own peril and responsibility. Thus it is clear that plaintiff was guilty of gross negligence in attempting said turn.
In Muse v. Chambley, La.App., 16 So.2d 276, 279, the court, in refusing to apply the doctrine of last clear chance, said: "In view of the existing conditions and the briefness of time in which plaintiff could act toward preventing the collision, we do not think because she failed to do more than she did convicts her of any sort of negligence. She acted quickly and did that which, under the circumstances, could be expected of her or any person of average intelligence and forethought. It is probable that she could have driven her car a few feet farther on the shoulder but it does not appear that had she done so the accident would have been averted. Faced with the imminent danger from the emergency of defendant's creation, in law she will not be held to the exercise of that mature and unerring judgment that would be *316 required and expected of her in meeting and solving problems arising in the normal activities of life."
See also: Williams v. George A. Hormel & Co., La.App., 195 So. 634; Lacy v. Lucky, La.App., 140 So. 857; Fidelity & Guaranty Fire Corp. v. Ritter, La.App., 37 So.2d 349.
The doctrine of last clear chance imposes upon one discovering the peril of another, brought about by the negligence of the other, the duty of taking every reasonable and prudent precaution to save the other from the consequences of his negligent acts. The party discovering the peril can be held to do no more than what a normal reasonable and prudent man would do under the emergencies of the situation; he will not be held to unerring judgment. We conclude that Maricelli took reasonable precaution to avert the harm to plaintiff, and, thus, the doctrine of last clear chance will not apply. We further conclude that a proximate cause of the accident was the gross negligence of plaintiff in executing a left turn in the face of oncoming traffic.
In reconvention, defendants plead that the negligence of plaintiff in attempting to negotiate a left turn in the face of oncoming traffic constituted the sole and proximate cause of the accident for which plaintiff should be held liable. The demand in reconvention is in the amount of $448.26. Paragraph 20 of defendants answer and reconventional demand reads as follows: "That as a result of said collision said Mercury automobile, owned and driven by said plaintiff in reconvention, was damaged and repaired at a cost of Four Hundred Fortyeight and 26/100 ($448.26) Dollars, as will appear more fully by reference to the itemized statements annexed hereto and made a part hereof."
Defendant failed to annex said statements to his pleadings. On trial of the matter, defendant counsel offered said statements as evidence, together with oral testimony as to the damages in reconvention, which offers were objected to by plaintiff on the grounds that the statements were not annexed to or filed with the answer, that the statements were never seen by attorney for plaintiff, and were not a part of the pleadings of plaintiff in reconvention. The trial court referred the objection of plaintiff to the merits, whereupon the exhibits were introduced by defendant. As a matter of fact, these statements (D-1 and D-2) total in the sum of $421.12, rather than $448.26, as is alleged in defendants' pleadings.
The law is well settled in this state that a reconventional demand is considered as a petition setting forth a distinct cause of action; that, therefore, it must be set forth with the same clearness and precision as is alleged in a direct action. Stringfellow v. Nowlin Bros., 157 La. 683, 102 So. 869; Teal v. Lyons, 30 La. Ann. 1140.
In Busby v. Childress, La.App., 187 So. 104, 107, the court said:
"A question of law, however, enters into and must be considered in connection with the computation of defendant's account. This arises by reason of an objection on the part of plaintiff's counsel to the evidence offered by defendant in support of his claim for groceries and cash advanced to plaintiff. The objection urged was that the allegations of the answer concerning the claim were too vague, general and indefinite to authorize the introduction of proof. The evidence was admitted subject to the objection and was given consideration by the trial judge in reaching his decision. We think that the objection should have been sustained, and the proof offered by defendant excluded.
"This court said in the case of Bloomenstiel v. McKeithen, 19 La.App. 513, 139 So. 519, 521, that: `A plea of compensation, offset, or a reconventional demand should be set forth with the same certainty as to amounts, dates, items, etc., as though the party pleading it were plaintiff in the suit, in order that the plaintiff may properly defend himself against such claim. There was no other defense made by defendants, other than its attempt to offset the amount due, which evidence was inadmissible.'
"The answer of defendant in the instant case is not particularized, as is required by *317 our law, with reference to the items of groceries and cash claimed to have been furnished. Such items, for which credit is asked, are merely alleged on in globo, as is disclosed by the above quoted allegations."
See also: Cigali v. Kaplan, La.App., 37 So.2d 467; Busby v. Childress, 7 La.App., 187 So. 104; Robert v. Blythe Company, La.App., 145 So. 15; Arcadia Lumber Company v. Austin, 15 La.App. 212, 131 So. 601; Barnard v. Dealers Finance Co., La. App., 9 So.2d 263; Traina v. Frank Jordano & Co., La.App., 33 So.2d 568.
In Robert v. Blythe Co., supra, the court said: "* * * The failure of plaintiff to give necessary details is not fatal, since he may amend following the maintenance of an exception of vagueness, but the failure of a defendant to meet the necessities of pleading results in the deprivation of the right of presenting proof in support of his claim; no amendment being permitted. This is true with respect to the analogous plea in reconvention. Stringfellow v. Nowlin Bros., 157 La. 683, 102 So. 869; Stroud v. Beardslee, 2 Mart., La., N.S., 84; Perry v. Gerbeau, 5 Mart., La., N.S., 14; McMasters v. Palmer, 4 La.Ann. 381; Wilcox v. His Creditors, 11 Rob., La., 346." [145 So. 16.]
Able counsel for defendant cites Hewitt v. Williams, 47 La.Ann. 742, 17 So. 269, in support of his offer of evidence in support of his reconventional demand. In that case the plaintiff failed to annex to his petition a promissory note sued upon. The court, in that case, dismissed defendant's exception to the failure of plaintiff to annex the notes to his petition upon the grounds that the cause of action was intelligently set out in the petition, and that defendant had the right to demand an exhibit of the said notes. Said case would come within the provisions of Article 175 of the Louisiana Code of Practice of 1870, and has no connection with the case presently before us. In each of the cases cited by defendant, the insufficiency alleged was in the petition, and not in a reconventional demand as is the case here.
We believe that the plaintiff's objection to defendants' offer of evidence in support of his reconventional demand should have been sustained. The reconventional demand merely alleges the total sum of damages claimed. There is no stipulation therein as to what portions of defendant's car were damaged, nor is there an itemization of the repair bill. The allegations in reconvention, insofar as amount of damages were concerned, were not sufficiently particularized as to place plaintiff counsel on guard in preparing his defense in reconvention. Evidence in this case supporting the reconventional demand would necessarily constitute enlargement of the pleadings. Because of defendants' failure to properly itemize his damages in reconvention, the objection by plaintiff should have been sustained, and the reconventional demand dismissed as of nonsuit. Ceromi v. Harris, 187 La. 701, 175 So. 462; Barnard v. Dealers Finance Co., La.App., 9 So.2d 263.
Under the circumstances, since the defendant and plaintiff in reconvention could not prove his damages, it will not be necessary for this court to go into the question of contributory negligence on the part of this defendant, Maricelli, but it appears to this court that this defendant was travelling at least 40 miles an hour if not more. However, in view of the conclusion we have reached in not being able to dispose of the demand of the plaintiff in reconvention, it is useless for us to discuss the negligence of this defendant.
For the reasons assigned, the judgment of the lower court is hereby annulled and reversed insofar as it grants a judgment in favor of plaintiff and against the defendant and it is the further judgment of this court that the demands of plaintiff be dismissed at plaintiff's cost, and that the reconventional demand of defendant be dismissed as of nonsuit.